UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

AMBER HAHMER ULRICH            CIVIL ACTION NO. 14-0037

VERSUS            JUDGE S. MAURICE HICKS, JR.

CHARLES R. SCOTT, ET AL.            MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court is a Motion to Dismiss Pursuant to Rule 12(b)(6) filed by Defendants, the City of Shreveport ("the City") and Terri Scott ("Scott"). See Record Document 12. Defendants argue that Plaintiff Amber H. Ulrich's ("Ulrich") complaint fails to state factual allegations against the City and Scott sufficient to state a plausible claim for relief. See id. Additionally, Scott argues that she is entitled to absolute prosecutorial immunity or qualified immunity for the claims against her in her individual capacity. See id. Ulrich has opposed the motion. See Record Document 16. For the reasons which follow, the Rule 12(b)(6) Motion is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to all federal claims against the City and Scott. The motion is **DENIED WITHOUT PREJUDICE** to be refiled as to the state law claims against the City and Scott.

**BACKGROUND**

Ulrich asserts claims against Scott and the City for alleged violations of the Fourth Amendment (false arrest), Fifth Amendment (protection against double jeopardy), and Sixth Amendment (right to a speedy trial).[1] See Record Document 21 at ¶¶ 34-50. She also asserts state law claims of negligence, malicious prosecution, abuse of process and

---

[1] Ulrich has also named Caddo Parish District Attorney Charles Scott, Assistant District Attorney Kenya Ellis, and Assistant District Attorney Jordan Bird as defendants.

unlawful detention. See id. at ¶¶ 51-56. Her claims arise from the Shreveport City Attorney transferring a dismissed misdemeanor case to the Caddo Parish District Attorney for prosecution of a felony. See Record Document 21 at ¶ 12. Ulrich alleges that the transferred case had been closed and dismissed by the Shreveport City Attorney in February 2008 after she paid administrative fees and completed "the City Attorney's probation." Id. at ¶¶ 5-6. She contends that her "sentence was a final adjudication." Id. at ¶ 6. After the case was transferred to Caddo Parish District Court, Ulrich was arrested in January 2013, spent two to three weeks in jail, lost her security officer job at a local casino, and lost her gaming license. See id. at ¶¶ 7-10, 27. The felony charges were ultimately dismissed in February 2013, with the Caddo District Attorney's Office citing "defendant convicted in another jurisdiction" as the reason. Id. at ¶¶ 11, 28.

As to Scott and the City, Ulrich specifically alleges:

The CITY ATTORNEY acting on behalf of the CITY OF SHREVEPORT transferred the dismissed case to district court for prosecution by The Caddo Parish DA. Due to the influence of the CITY ATTORNEY, the Caddo District Attorney's office accepted the case for prosecution. The City Attorney failed to notify the Caddo District Attorney's office that the City Attorney had already prosecuted this matter and had dismissed it. The City Attorney failed to provide the Caddo Parish DA with a current address at which to notify Plaintiff. The Caddo Parish DA accepted the case for prosecution in part due to the prestige and clout of the City Attorney and her employees. If the City Attorney had not referred the case for prosecution, the Caddo Parish DA would not have prosecuted the case.

Record Document 21 at ¶ 12. Ulrich further alleges that "[n]one of the named Defendants herein had a policy or practice of verifying whether or not a city police issued summons over . . . two years old had been previously prosecuted." Id. at ¶ 21. Instead, Ulrich contends that Defendants "had a policy or practice of prosecution without verification of charges that were based on events over two years old," which Defendants should have

known could lead to "bench warrants . . . being issued with double jeopardy or due process violations and without probable cause." Id. Finally, Ulrich alleges that Defendants, including Scott and the City, "did not provide training, nor made any policy or practice as to the use of addresses listed on summons which is known to be outdated or which present indicia of being stale (over two years old). The lack of such a practice or policy is an obvious deficiency which would lead to a constitutional violation such as a false arrest on a bench warrant or which result in a violation of double jeopardy." Id. at ¶ 25. As to Scott and the City, she contends that "a prudent city attorney would be motivated under such circumstances to implement a policy of checking summons that are dated over either two years or five years to insure that the matter is still an open case and additionally the information on the defendant is accurate and current and would provide training to clerical staff." Id.

The City and Scott have now moved to dismiss all of Ulrich's claims against them.

## LAW AND ANALYSIS

**I.     Rule 12(b)(6) Standard.**

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-1965 (2007); see also Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir.2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. The Supreme Court expounded on the Twombly

standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. See In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir.2009).

## II. Monell Standard.

Under Monell, a municipality cannot be held vicariously liable for the unconstitutional actions of its employees or agents. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S.Ct. 2018, 2037 (1978). Instead, a municipality can be held liable under Section 1983 only when there is "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 1203 (1989). Thus, in order to survive a motion to dismiss, the Fifth Circuit requires a plaintiff to plead specific facts which show: (1) a policy or custom existed; (2) the municipal policymakers actually or constructively knew of its existence; (3) a constitutional violation occurred; and (4) the custom or policy served as the moving force behind the violation. See Meadowbriar Home for Children v. Gunn, 81 F.3d 521, 532-533 (5th Cir. 1996), citing Palmer v. City of San Antonio, 810 F.2d 514, 516 (5th Cir. 1987).

## III. Immunity Standards.

A prosecutor sued in his individual capacity is immune from civil suit for damages under Section 1983 for his actions in initiating and pursuing a criminal prosecution through the judicial process. See Imbler v. Pachtman, 424 U.S. 409, 431, 96 S.Ct. 984, 995 (1976);

see also Brooks v. George County, 84 F.3d 157, 168 (5th Cir.), cert. denied, 519 U.S. 948, 117 S.Ct. 359 (1996) ("Actions which are related to the judicial process fulfill the prosecutor's advocatory function and are considered absolutely immune from suit"). The immunity afforded prosecutors is absolute, not qualified, and protects a prosecutor from being sued in connection with his duties altogether, regardless of the merits of the claim. See Lucas v. Parish of Jefferson, 999 F.Supp. 839, 942 (E.D.La. 1998). Absolute immunity protects prosecutors from all liability even when they act "maliciously, wantonly, or negligently." Morrison v. City of Baton Rouge, 761 F.2d 242, 248 (5th Cir. 1985). "[A]cts which are investigative or administrative do not carry absolute immunity." Brooks, 84 F.3d at 168.

Qualified immunity generally shields government officials who perform discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). In evaluating a motion to dismiss based on qualified immunity, a court must first consider whether the facts as alleged show that the defendant's conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001). If so, the court must consider whether the right was sufficiently clear that a reasonable official would understand that the alleged conduct violates the right.[2] See id. at 202, 121 S.Ct. at 2156.

---

[2]"The second prong of the qualified immunity test is understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the defendant's conduct was objectively unreasonable in the light of that then clearly established law." Tolan v. Cotton, 713 F.3d 299, 305 (5th Cir. 2013).

The court need not necessarily conduct the analysis in this order.[3] See Pearson v. Callahan, 555 U.S. 223, 227, 129 S.Ct. 808, 812 (2009). "Bare allegations of malice should not suffice to overcome qualified immunity." Harlow, 457 U.S. at 817, 102 S.Ct. at 2738.

## IV.　Analysis.

At the outset, the Court notes that Ulrich has agreed to the dismissal of official capacity claims against Scott. See Record Document 16 at 10. Additionally, Ulrich has agreed to dismiss the claims of denial of speedy trial against the City and Scott. See id. at 11. The Rule 12(b)(6) Motion is, therefore, **GRANTED** as to these claims.

In her opposition, Ulrich also argued that "if all else fails, [she] should be allowed to amend her Complaint." Record Document 16 at 14. Such opposition was filed on June 18, 2014. Since that time, Ulrich was permitted to file a Second Amended Complaint on June 24, 2014. See Record Document 21. The instant Memorandum Ruling considers the factual allegations set forth in the Second Amended Complaint; thus, Ulrich's request to amend is **DENIED**.

### A.　Violation of Fourth Amendment (False Arrest) and Fifth Amendment (Double Jeopardy Protection).

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

---

[3]"Qualified immunity may be granted without deciding the first prong if plaintiff fails to satisfy the second." Tolan, 713 F.3d at 305 (5th Cir.2013). "Deciding the second prong first is often advisable; for example, if . . . a constitutional right is claimed to have been violated (first prong), this approach of first addressing the second prong comports with the usual reluctance to decide constitutional questions unnecessarily." Id.

U.S. Const. Amend. IV. The Double Jeopardy Clause of the Fifth Amendment provides that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V.

Ulrich alleges that the City and Scott knew or should have known that she had already been prosecuted and there was no policy in effect to detect this type of error, all in violation of her Fourth Amendment rights. See Record Document 21 at ¶ 35. She further contends that the City and Scott violated her Fifth Amendment in that they failed "to inform the Caddo DA of their dismissal and prosecution of the same charges." Record Document 21 at ¶ 44.

Scott

As to the Fourth Amendment claim, Scott first argues that she did nothing to cause the arrest of Ulrich, as Scott did not request the bench warrant. See Record Document 12-1 at 9; Record Document 19 at 2. Scott further invokes absolute prosecutorial immunity as to the Fourth Amendment claim. The Court agrees that absolute immunity is warranted, as it believes all of Ulrich's factual allegations against Scott concern acts committed by Scott in her adjudicative role as a prosecutor. Her only link to Ulrich's arrest was transferring the case for prosecution, which this Court believes to be intimately associated with the judicial phase of the criminal process and not an administrative or investigative task.[4] See Brooks, 84 F.3d at 168.

---

[4] The Court notes that there are some purely administrative tasks that are so intimately associated with the judicial phase of the criminal process that they will nonetheless be covered by absolute immunity. See Van de Kamp v. Goldstein, 555 U.S. 335, 349, 129 S. Ct. 855, 864 (2009) (holding absolute immunity applies to prosecutor's failure to train, failure to supervise, and failure to establish an information system).

As to the Fifth Amendment double jeopardy claim, the Court likewise finds that Scott is entitled to absolute prosecutorial immunity. While the decision to transfer the case to the Caddo Parish District Attorney's Office might have been erroneous and/or negligent, this Court believes it falls within the scope of initiating and pursuing a criminal prosecution. See Imbler, 424 U.S. at 431, 96 S.Ct. at 995. Despite Ulrich's argument to the contrary, this Court holds that Scott was not acting in an investigatory capacity, to which absolute immunity does not extend. Accordingly, both the Fourth and Fifth Amendment claims against Scott are **DISMISSED** as she is entitled to absolute prosecutorial immunity.[5]

The City

Ulrich does not allege that the City had an official policy of knowingly transferring proceedings to the Caddo Parish District Attorney's Office or otherwise commencing prosecutions in Caddo Parish District Court after such proceedings were dismissed in City Court or an official policy of "causing" the issuance of a bench warrant without probable cause. Moreover, even if such policies had been alleged, there are no factual allegations that any City policymakers had actual or constructive knowledge of such policies or that such policies were the "moving force" behind Ulrich's arrest and/or prosecution in Caddo Parish District Court.

At most, Ulrich makes conclusory allegations regarding "a policy or practice of prosecution without verification of charges that were based on events over two years old" and failure to "provide training, nor . . . any policy or practice as to the use of addresses listed on summons which is known to be outdated or which present indicia of being stale."

---

[5]Because this Court held that Scott is entitled to absolute prosecutorial immunity, it need not reach the alternative argument regarding qualified immunity.

Record Document 21 at ¶¶ 21, 25. Ulrich's allegations are inadequate to state a claim against the City for violation of the Fourth or Fifth Amendments. She has failed to identify any City policymakers who knew of this alleged policy or practice and/or that the alleged promulgated policy/practice was the moving force behind her arrest and/or prosecution.

As to her failure to train allegation, she must show that (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference. See Gates v. Tex. Dept. of Protective and Regulatory Servs., 537 F.3d 404, 435 (quoting Estate of Davis ex rel. McCully v. City of North Richland Hills, 406 F.3d 375, 381 (5th Cir.2005)). Here, Ulrich's assertions of inadequate training and supervision are inadequate to state a claim against the City, namely because there is no allegation of deliberate indifference, a stringent standard of fault.[6] Accordingly, the Rule 12(b)(6) Motion is **GRANTED** and the Fourth and Fifth Amendment claims against the City are **DISMISSED**.

B.   **State Law Claims.**

Ulrich alleges state law claims of negligence (fault), malicious prosecution, abuse of process and unlawful detention. See Record Document 21 at ¶ 51. She contends that

---

[6]"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Deliberate indifference requires a showing of more than negligence or even gross negligence. Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference . . . . To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." Estate of Davis, 406 F.3d at 381-382.

the City and Scott were careless and negligent "when [they] failed to properly notify and disclose to the Caddo Parish District Attorney that the City had already prosecuted the case and [when they] transferred the case for prosecution knowing the case was closed and failed to provide a current address for [Ulrich]." Id. at ¶ 52. Ulrich maintains that the City Attorney "induced or caused the prosecution " by the Caddo Parish DA and that the institution of the prosecution was without probable cause and with malice. Id. at ¶ 53. Finally, Ulrich alleges that the City Attorney's referral and inducement of prosecution "violated several duties that the City Attorney owes to criminal defendants and to the public at large: the prosecution was frivolous, was an affront to justice." Id. at ¶ 54.

Ulrich's state law claims were not plead in detail until the Second Amended Complaint, which was filed on June 24, 2014. See Record Document 21. Thus, when the City and Scott filed their reply brief on this same date, they addressed the state law claims pled by Ulrich in her First Amended Complaint (Record Document 15). The City and Scott argued, in part, that Ulrich's state law claims "were not specifically pled" and she "cannot maintain such claims." Record Document 19 at 3.[7] Thus, the Rule 12(b)(6) Motion filed by the City and Scott as to state law claims is hereby **DENIED WITHOUT PREJUDICE** to be refiled such that the factual allegations underlying Ulrich's state law claims can be more fully addressed by the City and Scott.[8]

---

[7]The City and Scott also argue that Ulrich relies on allegation not in her Complaint. See Record Document 19 at 3.

[8]While the federal claims against Scott and the City have been dismissed, there are remaining federal claims pending against other Defendants. Thus, at this time, the Court will exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the remaining state law claims.

## CONCLUSION

Based on the foregoing analysis, the Court **GRANTS** the Rule 12(b)(6) Motion as to all federal claims against Scott and the City. The Rule 12(b)(6) Motion is **DENIED WITHOUT PREJUDICE** as to the state law claims. The City and Scott are free to refile their motion to address the new factual allegations underlying Ulrich's state law claims, as set forth in the Second Amended Complaint (Record Document 21). The Court further **DENIES** Ulrich's request to amend.

**IT IS SO ORDERED.**

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 19th day of March, 2015.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE