**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| AMBER HAHMER ULRICH | CIVIL ACTION NO. 14-0037 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CHARLES R. SCOTT, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a Motion to Dismiss Pursuant to Rule 12(b)(6) filed by Defendants, Caddo Parish Assistant District Attorneys Jordan Bird ("Bird") and Kenya Ellis ("Ellis"). See Record Document 22. Defendants argue that Plaintiff Amber H. Ulrich's ("Ulrich") complaint as amended fails to state a claim upon which relief can be granted. See id. Bird and Ellis argue that many of Ulrich's allegations fails as conclusory and, additionally, that they are entitled to absolute immunity. See id. They further maintain that Ulrich continues to assert claims against them which assume they are policymakers for the Caddo Parish District Attorney's Office. See id. Ulrich has opposed the motion. See Record Documents 24 & 28. For the reasons which follow, the Rule 12(b)(6) Motion is **GRANTED** and Ulrich's federal claims against Bird and Ellis are **DISMISSED**.

## BACKGROUND

Ulrich asserts claims against Bird and Ellis for alleged violations of the Fourth Amendment (false arrest), Fifth Amendment (protection against double jeopardy), and Sixth Amendment (right to a speedy trial).[1] See Record Document 21 at ¶¶ 34-50. She also

---

[1]Ulrich has also named Caddo Parish District Attorney Charles Scott, in his official capacity, as a defendant. See Record Document 21 at ¶ 3A. Ulrich also named the City of Shreveport ("the City") and City Attorney Terri Scott ("Scott") as defendants. See id. at ¶¶ 3D & 3E. All federal claims against the City and Scott have been dismissed. See Record Documents 29 & 30. Only state law claims remain against them. See id.

asserts state law claims of negligence, malicious prosecution, abuse of process and unlawful detention. See id. at ¶¶ 51-56.[2] Her claims arise from the Shreveport City Attorney transferring a dismissed misdemeanor case to the Caddo Parish District Attorney for prosecution of a felony. See Record Document 21 at ¶ 12. Ulrich alleges that the transferred case had been closed and dismissed by the Shreveport City Attorney in February 2008 after she paid administrative fees and completed "the City Attorney's probation." Id. at ¶¶ 5-6. She contends that her "sentence was a final adjudication." Id. at ¶ 6.

After the case was transferred to Caddo Parish District Court, Ulrich was arrested in January 2013, spent two to three weeks in jail, lost her security officer job at a local casino, and lost her gaming license. See id. at ¶¶ 7-10, 27. The felony charges were ultimately dismissed in February 2013, with the Caddo District Attorney's Office citing "defendant convicted in another jurisdiction" as the reason. Id. at ¶¶ 11, 28.

Ulrich contends that this chain of events occurred, in part, because two assistant district attorneys sent illegal, unfounded, unauthorized letters in August 2011 and September 2011 for her to appear in court to answer criminal charges that had been dismissed three and a half years prior. See id. As to Bird and Ellis, Ulrich specifically alleges:

> 13. The Caddo Parish District Attorney's office was negligent in failing to determine if the charge had been disposed of in the city court which would have protected Plaintiff Ulrich from double jeopardy. The prosecution had no probable cause in part because the case had already been prosecuted and because the Caddo Parish DA dismissed the case before trial commenced.

---

[2]Bird and Ellis have not moved to dismiss the state law claims.

14. On August 8, 2011, without plaintiff's knowledge, the Caddo Parish District Attorney's office mailed a letter addressed to plaintiff but at a three and a half year old address to appear in the First Judicial District Court. At the time the letter was mailed the District Attorney had not initiated a criminal prosecution against Plaintiff. The First Judicial District Court had not issued any order for Plaintiff's appearance. . . .

15. Th DA's letter was addressed to the same address listed on the summons that was issued to Plaintiff Ulrich in March, 2006. At the time of the letters, this summons was over five (5) years old and the Caddo Parish District Attorney did not determine if this matter had already been prosecuted and did not verify the five (5) year old address.

16. The letter dated August 8, 2011 was returned to the Caddo Parish District Attorney's office as "undeliverable." On September 6, 2011, the Caddo Parish District Attorney's office through . . . Bird again sent another letter requiring Plaintiff's appearance in court under the penalty of contempt for failure to appear. It was mailed to the same address as the letter dated August 8, 2011, providing a new court date. The second letter was also returned as "undeliverable."

17. The Caddo Parish District Attorney had access to obtaining Plaintiff Ulrich's correct address through the Louisiana Department of Motor Vehicles. Her correct address was on her State of Louisiana driver's license issued on February 15, 2011. The Caddo Parish DA never notified Plaintiff that she was required to appear in court on any criminal charges. Bird and Ellis knowingly told the First Judicial Court that Plaintiff had been notified of her duty to appear and had failed to appear under penalty of contempt at a time when Bird and Ellis knew that to be untrue. Based upon the untrue assertions of Bird, the court issued a bench warrant for Plaintiff's arrest.

18. On March 10, 2011, Defendant Ellis requested a docket number from the Clerk. . . .

19. Assistant District Attorney . . . Ellis and . . . Bird caused to be issued from the DA's office letters to Ulrich for her to appear in court on criminal charges under the penalty of contempt. These letters were not authorized by law. . . .

20. Ellis and Bird failed to notify Ulrich of the court dates. Ellis and Bird . . . neither notified Ulrich, but persisted in continuing the prosecution. On September 22, 2011, knowing that Ulrich had no knowledge of any

requirement for her to be in Court, Ellis and Bird, and that no lawful order had issued to her to appear in the First Judicial District Court, requested that a bench warrant be issued for Plaintiff Ulrich for her alleged failure to appear in district court. Ellis and Bird knew or should have known at the time they issued the letters and made the decision to request the bench warrant that there was a substantial probability that (1) the prosecution of Plaintiff and all attendant proceedings were in violation of the Double Jeopardy and Due Process clauses of the Louisiana Constitution and the U.S. Constitution and (2) Plaintiff had received no notice of the proceedings against her and that a request for a bench warrant was unsupported by probable cause. There had been no probable cause determined by a court of law. Ellis and Bird knew or should have known that the notices to Ulrich to appear, and a decision to request for a bench warrant under these circumstances violated Plaintiff's Fourth, Fifth and Fourteenth Amendment rights. The failure to verify Plaintiff's Fourth, Fifth and Fourteenth Amendment rights. The failure to verify and obtain the correct address of Plaintiff was a cause in fact of the issuance of the bench warrant.

21. None of the named Defendants herein had a policy or practice of verifying whether or not a city police issued summons over . . . two years old had been previously prosecuted. Rather the defendants had a policy or practice of prosecution without verification of charges that were based on events over two years old. . . . The Defendants should know under these circumstances that bench warrants are at substantial risk of being issued with double jeopardy or due process violations and without probable cause.

22. Based upon information, Plaintiff also alleges that none of the defendants have any policy relative to the verification of correct addresses of a defendant. . . .

23. The defendants have provided no training, practice or policy to the DA's clerical staff or the assistant district attorneys to verify current addresses with the databases afforded to them through the Louisiana Department of Motor Vehicles, the Louisiana Gaming Control Board, the Louisiana State Police or other sources that are readily available.

24. When the first court appearance notice letter was returned to the District Attorney's office marked "undeliverable," [P]laintiff alleges that no other verification was sought. The Caddo Parish District Attorney simply sent another letter to the same exact address and got the same results. No other searches or efforts were made to notify Plaintiff, except to issue a bench warrant. These failures by the Caddo District Attorney, his employees and ADA Ellis and Bird are

> nonprosecutorial, administrative functions. The verification of an address is not an integral part of the judicial process.
>
> 25. The DA, ADA Ellis, ADA Bird, City Attorney and City of Shreveport did not provide training, nor made any policy or practice as to the use of addresses listed on summons which is known to be outdated or which present indicia of being stale (over two years old). The lack of such a practice or policy is an obvious deficiency which would lead to a constitutional violation such as a false arrest on a bench warrant or which result in a violation of double jeopardy. A prudent parish district attorney and a prudent city attorney would be motivated under such circumstances to implement a policy of checking summons that are dated over either two or five years to insure that the matter is still an open case and additionally the information on the defendant is accurate and current and would provide training to clerical staff and assistant district attorneys.

Id. at ¶¶ 13-25.

Bird and Ellis have now moved to dismiss all of Ulrich's federal claims against them. The instant Rule 12(b)(6) motion does not address Ulrich's state law claims. Likewise, the motion does not address Ulrich's claims against Caddo Parish District Attorney Charles Scott. Those claims are unaffected by the instant ruling and remain pending.

## LAW AND ANALYSIS

### I. Rule 12(b)(6) Standard.

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-1965 (2007); see also Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir.2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of

a cause of action will not do." Id. The Supreme Court expounded on the Twombly standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. See In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir.2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." The Iqbal court explained:

> Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for *679 a plaintiff armed with nothing more than conclusions. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief.
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 556 U.S. at 678-679, 129 S. Ct. at 1949-1950 (internal citations and quotations omitted).

## II. Absolute Immunity Standard.

A prosecutor sued in his individual capacity is immune from civil suit for damages under Section 1983 for his actions in initiating and pursuing a criminal prosecution through

the judicial process. See Imbler v. Pachtman, 424 U.S. 409, 431, 96 S.Ct. 984, 995 (1976); see also Brooks v. George County, 84 F.3d 157, 168 (5th Cir.), cert. denied, 519 U.S. 948, 117 S.Ct. 359 (1996) ("Actions which are related to the judicial process fulfill the prosecutor's advocatory function and are considered absolutely immune from suit"). The immunity afforded prosecutors is absolute, not qualified, and protects a prosecutor from being sued in connection with his duties altogether, regardless of the merits of the claim. See Lucas v. Parish of Jefferson, 999 F.Supp. 839, 942 (E.D.La. 1998). Absolute immunity protects prosecutors from all liability even when they act "maliciously, wantonly, or negligently." Morrison v. City of Baton Rouge, 761 F.2d 242, 248 (5th Cir. 1985). "[A]cts which are investigative or administrative do not carry absolute immunity." Brooks, 84 F.3d at 168.

## III. Analysis.

At the outset, the Court notes that Ellis and Bird are sued in their individual capacities only.[3] Ellis and Bird first argue that many of the allegations set forth against them are nothing more than legal conclusions unsupported by factual allegations. They further contend that all of their acts regarding Ulrich were related to the prosecution of a criminal offense; thus, they are absolutely immune from civil liability in their individual capacity. Finally, they maintain that assistant district attorneys are not considered policymakers and, therefore, they argue that the claims against them for adopting or failing to adopt a policy, practice, or custom must be dismissed.

---

[3]Ulrich concedes that official capacity claims against Bird and Ellis should be dismissed. See Record Document 24 at 12. Thus, to the extent necessary, the Court hereby **DISMISSES** such claims.

**A. Conclusory Allegations.**

Ulrich alleges that Bird and Ellis "knew or should have known" that Ulrich did not receive notice of the proceedings; that the notice to appear and bench warrant violated Ulrich's rights; that the prosecution was barred on legal grounds; or that Ulrich had been prosecuted in another jurisdiction. See Record Document 21 at ¶¶ 20, 35 & 36. She further alleges that one or both of Bird and Ellis continued the prosecution while knowing she had not received the letters. See id.

Under Iqbal, this Court is not bound to accept as true legal conclusions couched as factual allegations. See Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949-1950. In Twombly, the Court found allegations that relied upon information and belief and those that set forth a "wholly conclusory statement of claim" to be inadequate. Twombly, 550 U.S. at 561, 127 S.Ct. at 1968. Here, Ulrich's allegations regarding what Bird and Eillis knew or should have known and what they did "while knowing" are conclusory in nature and the type of allegations that are not entitled to the assumption of truth. There is simply no factual support for the Court to even reach the plausibility stage as to these assertions. Accordingly, the Court hereby **GRANTS** the Rule 12(b)(6) motion as to Ulrich's "knew or should have known" or "while knowing" allegations, as these allegations are nothing more than conclusory allegations that are not entitled to the presumption of truth at the Rule 12(b)(6) stage.

**B. Claims Based on Policies, Customs, Practices and/or Training.**

Many of Ulrich's claims against Bird and Ellis relate to training, policies, customs, and/or practices of the District Attorney's Office. Such allegations include: (1) no policy or

practice of verifying whether or not a city police issued summons over two years old had been previously prosecuted; (2) no policy relative to the verification of correct addresses of a defendant; (3) no training, practice or policy to verify current addresses with the databases afforded to Defendants; and (4) no training, policy or practice as to the use of an address listed on summons which is known to be outdated or which present indicia of being stale. See Record Document 21 at ¶¶ 21-23 & 25.

There is no dispute that Bird and Ellis have been sued in their individual capacities only. Likewise, Ulrich does not contest that Bird and Ellis were assistant district attorneys. In this instance, it is the Court's "task is to identify those officials or governmental bodies who speak with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation." Burge v. Parish of St. Tammany, 187 F.3d 452, 468 (5th Cir.1999). In Burge, the Fifth Circuit concluded that "a district attorney is the independent and final official policymaker for all of the administrative and prosecutorial functions of his office." Id. at 469. Thus, because they have been sued in their individual capacities only, assistant district attorneys Bird and Ellis can not be held liable as to the existence, or lack thereof, of a policy, a practice, a custom, or training. See Truvia v. Julien, 187 F. App'x 346, 350 (5th Cir. 2006) ("An assistant district attorney, therefore, is not a policymaker and not the proper defendant for an official capacity claim against the District Attorney's Office."). Thus, the Rule 12(b)(6) motion is **GRANTED** as to all claims relating to policy, practice, custom, and/or training.[4]

[4]Such claims are more properly directed against Caddo Parish District Attorney Charles Scott, who has been sued in his official capacity.

**C. Absolute Immunity.**

Moving past the conclusory allegations and the policy/custom/practice/training allegations, Ulrich's remaining claims relate to a discrete set of facts: requesting a docket number, mailing two letters, and requesting a bench warrant. For purposes of the instant ruling, the Court will assume these factual allegations to be true pursuant to Rule 12(b)(6). Ulrich argues that absolute immunity is not available to Bird and Ellis for these acts because (1) issuing the letters in question were administrative functions; (2) the acts of issuing the letters happened before any probable cause determination and indictment; (3) Bird and Ellis used an unauthorized process to compel Ulrich to appear; and (4) Bird and Ellis intentionally provided false or misleading information to the state court to issue the bench warrant. See Record Document 24 at 12. The Court disagrees, finding that the acts which Ulrich complains of are either prosecutorial functions or administrative functions so closely tied to advocacy in a criminal matter that absolute immunity attaches.

Issuance of Letters

Ulrich argues that the acts of Bird and Ellis in creating, obtaining and sending letters are administrative functions and not advocative functions. See Record Document 24 at 24. She likewise contends that Bird and Ellis are not entitled to absolute immunity because they had no authority to mail such letters prior to the commencement of criminal proceedings, i.e., before any probable cause determination and/or indictment. See id. at 25.

At the outset, this Court notes the broad impact of absolute immunity, as the doctrine protects prosecutors from all liability even when they act "maliciously, wantonly, or negligently." Morrison, 761 F.2d at 248. Moreover, the Court believes that the issuance of the notice letters was an action related to the judicial process such that it fell within the

prosecutorial role of Bird and Ellis. See Brooks, 84 F.3d at 168. As argued by Defendants, this Court finds that sending a notice to defendant regarding their upcoming arraignment should be protected by that same shelter that protects other prosecutorial acts from the threat of subsequent vexatious litigation.

Notwithstanding, even if this Court were to consider the issuance of such letters to be administrative, such acts falls within the scope of the Supreme Court's Van de Kamp decision. In Van de Kamp v. Goldstein, 555 U.S. 335, 129 S. Ct. 855 (2009), the Supreme Court compared administrative duties not connected with prosecution versus those administrative duties so closely related to prosecutorial functions such that they are covered by absolute immunity. The Court held:

> Even so, we conclude that prosecutors involved in such supervision or training or information-system management enjoy absolute immunity from the kind of legal claims at issue here. Those claims focus upon a certain kind of administrative obligation – a kind that itself is directly connected with the conduct of a trial. Here, unlike with other claims related to administrative decisions, an individual prosecutor's error in the plaintiff's specific criminal trial constitutes an essential element of the plaintiff's claim. The administrative obligations at issue here are thus unlike administrative duties concerning, for example, workplace hiring, payroll administration, the maintenance of physical facilities, and the like. Moreover, the types of activities on which Goldstein's claims focus necessarily require legal knowledge and the exercise of related discretion, e.g., in determining what information should be included in the training or the supervision or the information-system management. And in that sense also Goldstein's claims are unlike claims of, say, unlawful discrimination in hiring employees. Given these features of the case before us, we believe absolute immunity must follow.

Id. at 344, 129 S. Ct. at 861-862. Based upon this rationale, absolute immunity follows because the sending of the notices was directly connected with the conduct of prosecution. Moreover, in sending the letters, Bird and Ellis necessarily employed some level of legal knowledge and the exercise of their related discretion.

Alleged Unauthorized Process to Compel and the Alleged Intentional Provision of False or Misleading Information to the State Court to Issue the Bench Warrant

Ulrich argues that the illegality and unconstitutionality of the process used in the attempt to notify her about forthcoming filing of a bill of information prevents the attachment of absolute immunity.[5] Additionally, she contends that Bird and Ellis intentionally provided false or misleading information to the state court to issue the bench warrant and, thus, absolute immunity is unavailable.[6]

Again, the Court is mindful that absolute immunity protects prosecutors from all liability even when they act "maliciously, wantonly, or negligently." Morrison, 761 F.2d at 248. Here, the Court believes that obtaining a warrant when Ulrich did not appear was clearly a prosecutorial function. Many of Ulrich's allegations as to these issues are part of her "knew or should have known" or "while knowing" allegations. The Court has previously held that such allegations are conclusory and are not entitled to the presumption of truth. The Court is also unconvinced by Ulrich's argument that the illegality of the notices negates the availability of absolute immunity, as the cases cited by Ulrich are inapposite to the instant matter. For these reasons, the Rule 12(b)(6) motion is **GRANTED** as to all remaining federal claims against Bird and Ellis, as they are entitled to prosecutorial absolute immunity.

---

[5]Ulrich maintains that the letters commanding her appearance under the threat of contempt of court were not authorized by law, as there was no pending prosecution and no probable cause determination.

[6]Ulrich contends that the bench warrant was issued based upon representations by Bird and Ellis that Ulrich had received notice and she was under a lawful order to appear.

## CONCLUSION

Based on the foregoing analysis, the Court **GRANTS** the Rule 12(b)(6) Motion as to all federal claims against Bird and Ellis. Ulrich's state law claims against Bird and Ellis and her federal claims against Caddo Parish District Attorney Charles Scott, in his official capacity, remain.

**IT IS SO ORDERED.**

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 24th day of March, 2015.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE