UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| AMBER HAHMER ULRICH | CIVIL ACTION NO. 14-0037 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CHARLES R. SCOTT, ET AL. | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM RULING

Before the Court is a Motion to Dismiss Pursuant to Rule 12(b)(6) filed by Defendants, Caddo Parish Assistant District Attorneys Geya Prudhomme ("Prudhomme"), Jordan Bird ("Bird") and Kenya Ellis ("Ellis"). See Record Document 47. Defendants argue that Plaintiff Amber H. Ulrich's ("Ulrich") Third Amended Complaint (Record Document 39) fails to state a claim upon which relief can be granted. See Record Document 47. Prudhomme, Bird and Ellis argue that many of Ulrich's allegations fail as conclusory and, additionally, that they are entitled to absolute immunity. See id. They further maintain that Ulrich continues to assert claims against them in their official capacities and/or claims which assume they are policymakers for the Caddo Parish District Attorney's Office. See id. Ulrich has opposed the motion. See Record Document 52. For the reasons which follow, the Rule 12(b)(6) Motion is **GRANTED** and Ulrich's federal and state claims against Prudhomme, Bird and Ellis are **DISMISSED**.

### BACKGROUND[1]

Ulrich asserts claims against Prudhomme, Bird and Ellis for alleged violations of the

---

[1] In March 2015, this Court granted a Rule 12(b)(6) motion filed by Bird and Ellis. See Record Document 31 & 32. The ruling dismissed all federal claims against Bird and Ellis, namely because much of the complaint was conclusory and on the grounds of absolute immunity. See Record Document 31. Ulrich again amended her complaint in July 2015 and included federal and state law claims against Bird and Ellis and also added Prudhomme as a defendant. See Record Documents 37-39. She likewise asserted federal and state law claims against Prudhomme. See Record Document 39.

Fourth Amendment (false arrest), Fifth Amendment (protection against double jeopardy), and Sixth Amendment (right to a speedy trial). See Record Document 39 (Third Amended Complaint) at ¶¶ 34-50. She further alleges a violation of her due process rights due to malicious prosecution and asserts state law claims of abuse of process, malicious prosecution, false arrest, and double jeopardy. See id. at ¶¶ 51-58. Her claims arise from the Shreveport City Attorney transferring a dismissed misdemeanor case to the Caddo Parish District Attorney for prosecution of a felony. Ulrich alleges that the transferred case had been closed and dismissed by the Shreveport City Attorney in February 2008 after she paid administrative fees and completed "the City Attorney's probation or pre-trial diversion program." Id. at ¶¶ 5-7. She contends that her "sentence was a final adjudication." Id. at ¶ 7.

After the case was transferred to Caddo Parish District Court, Ulrich was arrested in January 2013, spent two to three weeks in jail, lost her security officer job at a local casino, and lost her gaming license. See id. at ¶¶ 8-11, 29. The felony charges were ultimately dismissed in February 2013, with the Caddo District Attorney's Office citing "defendant convicted in another jurisdiction" as the reason. Id. at ¶¶ 12, 30.

Ulrich contends that this chain of events occurred, in part, because certain assistant district attorneys sent illegal, unfounded, unauthorized letters in August 2011 and September 2011 for her to appear in court to answer criminal charges that had been dismissed three and a half years prior. See id. at ¶ 18. As to Prudhomme, Bird and Ellis, Ulrich specifically alleges:

> 14. The Caddo Parish District Attorney's office . . . [was] negligent in failing to determine (1) if the charge had been disposed of in the city court which would have protected Plaintiff Ulrich from double jeopardy (2) whether the Caddo Parish DA had jurisdiction to prosecute the

       case in the first place since it alleged the underlying crime allegedly happened in June 2007, when Plaintiff was living in Bossier Parish, LA. (3) that the time limits has expired to prosecute the case. The prosecution had no probable cause in part because the case had already been prosecuted, there was no [jurisdiction] in Caddo Parish, and because the Caddo Parish DA dismissed the case before trial commenced and the time limits had passed.

15. On August 8, 2011, without plaintiff's knowledge, the Caddo Parish District Attorney's office mailed a letter addressed to plaintiff in Bossier Parish which was a three and a half year old address. The letter commended her to appear in the First Judicial District Court. At the time the letter was mailed the District Attorney had not initiated a criminal prosecution against Plaintiff. The First Judicial District Court had not issued any order for Plaintiff's appearance. . . .

16. Th DA's letter was addressed to the same address listed on the summons that was issued to Plaintiff Ulrich in June, 2007. At the time of the letter, the 2007 summons was over four (4) years old and the Caddo Parish District Attorney did not determine if this matter had already been prosecuted and did not verify the four (4) year old address.

17. The letter dated August 8, 2011 was returned to the Caddo Parish District Attorney's office as "undeliverable." On September 6, 2011, the Caddo Parish District Attorney's office through . . . Bird again sent another letter requiring Plaintiff's appearance in court under the penalty of contempt for failure to appear. It was mailed to the same address as the letter dated August 8, 2011, providing a new court date. The second letter was also returned as "undeliverable."

18. The Caddo Parish District Attorney . . . had access to obtaining Plaintiff Ulrich's correct address through the Louisiana Department of Motor Vehicles. Her correct address was on her State of Louisiana driver's license issued on February 15, 2011. The Caddo Parish DA never notified Plaintiff that she was required to appear in court on any criminal charges. Prudhomme, Bird and Ellis knowingly told the First Judicial Court that Plaintiff had been notified of her duty to appear and had failed to appear under penalty of contempt at a time when Prudhomme, Bird and Ellis knew that to be untrue. On September 22, 2011, based upon the untrue and false assertions of Prudhomme, Ellis and Bird, the court issued a bench warrant for Plaintiff's arrest.

19. On March 10, 2011, Defendant Ellis requested a docket number from the Clerk. . . .

20. Assistant District Attorney . . . Ellis, Prudhomme, and . . . Bird caused to be issued from the DA's office letters to Ulrich for her to appear in court on criminal charges under the penalty of contempt. These letters were not authorized by law. . . .

21. On September 22, 2011, Prudhomme, Ellis and Bird caused to be filed a Bill of Information charging Plaintiff with the felony of Cruelty to a Juvenile. . . . [T]he time for instituting the prosecution against Plaintiff had expired by September 2011.

22. Prudhomme, Ellis and Bird failed to notify Ulrich of the court dates. Ellis and Bird . . . neither notified Ulrich, but persisted in continuing the prosecution. On September 22, 2011, knowing that Ulrich had no knowledge of any requirement for her to be in Court, and that no lawful order had issued to her to appear in the First Judicial District Court, Prudhomme, Ellis and Bird, either caused or requested that a bench warrant be issued for Plaintiff Ulrich for her alleged failure to appear in district court. Prudhomme, Ellis and Bird knew or should have known at the time they issued the letters and made the decision to request the bench warrant that there was a substantial probability that (1) the prosecution of Plaintiff and all attendant proceedings were in violation of the Double Jeopardy and Due Process clauses of the Louisiana Constitution and the U.S. Constitution and (2) Plaintiff had received no notice of the proceedings against her and that a request for a bench warrant was unsupported by probable cause (3) the time for instituting prosecution has passed and (4) there was no jurisdiction and venue. There had been no probable cause determined by a court of law. Prudhomme, Ellis and Bird knew or should have known that the (1) notices to Ulrich to appear, and a decision to request for a bench warrant under these circumstances violated Plaintiff's Fourth, Fifth and Fourteenth Amendment rights. The failure to verify and obtain the correct address of Plaintiff; and, (2) failure to understand they had no power to command a person to appear in Court without first having a summons, indictment or bill of information issued; and, (3) failure to verify jurisdiction and venue . . .; and, (4) failure to consider the time limits; and, (5) failure to consider probable cause were a cause in fact of the issuance of the bench warrant.

23. None of the named Defendants herein had a policy or practice of verifying whether or not a city police issued summons over six months old had been previously prosecuted. Rather the defendants had a policy or practice of prosecution without verification of charges, jurisdiction and venue and time limits that were based on events over six months old. This policy has a known, inherent flaw when prosecution starts in another jurisdiction and no verification of limitations of prosecution nor jurisdiction and venue . . . has been

        performed. . . . The Defendants should know under these circumstances that bench warrants are at substantial risk of being issued with double jeopardy or due process violations and without probable cause.

24. Based upon information, Plaintiff also alleges that none of the defendants have any policy relative to the verification of correct addresses of a defendant. . . .

25. The defendants have provided no training, practice or policy to the DA's clerical staff or the assistant district attorneys to verify current addresses with the databases afforded to them through the Louisiana Department of Motor Vehicles, the Louisiana Gaming Control Board, the Louisiana State Police or other sources that are readily available. Further, the defendants have no checklists or other practices in place to ensure that prosecutions which have no jurisdiction or past the time limits do not go forward.

26. When the first court appearance notice letter was returned to the District Attorney's office marked "undeliverable," [P]laintiff alleges that no other verification was sought. The Caddo Parish District Attorney simply sent another letter to the same exact address and got the same results. No other searches or efforts were made to notify Plaintiff, except to issue a bench warrant. These failures by the Caddo District Attorney, his employees and ADA Prudhomme, Ellis and Bird are non-prosecutorial, administrative functions. The verification of an address is not an integral part of the judicial process.

27. The DA, ADA Ellis, ADA Bird, ADA Prudhomme, City Attorney and City of Shreveport did not provide training, nor made any policy or practice as to the use of addresses listed on summons which is known to be outdated or which present indicia of being stale (over two years old). The lack of such a practice or policy is an obvious deficiency which would lead to a constitutional violation such as a false arrest on a bench warrant or which result in a violation of double jeopardy. A prudent parish district attorney and a prudent city attorney would be motivated under such circumstances to implement a policy of checking summons that are dated over either two or five years to insure that the matter is still an open case and additionally the information on the defendant is accurate and current and would provide training to clerical staff and assistant district attorneys.

Id. at ¶¶ 14-27. Prudhomme, Bird and Ellis have now moved to dismiss all of Ulrich's federal and state claims against them.

**LAW AND ANALYSIS**

**I.      Rule 12(b)(6) Standard.**

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-1965 (2007); see also Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir.2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. The Supreme Court expounded on the Twombly standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. See In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir.2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." The Iqbal court explained:

> Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief.

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 556 U.S. at 678-679, 129 S.Ct. at 1949-1950 (internal citations and quotations omitted).

## II.  Absolute Immunity Standard.

A prosecutor sued in his individual capacity is immune from civil suit for damages under Section 1983 for his actions in initiating and pursuing a criminal prosecution through the judicial process. See Imbler v. Pachtman, 424 U.S. 409, 431, 96 S.Ct. 984, 995 (1976); see also Brooks v. George County, 84 F.3d 157, 168 (5th Cir.), cert. denied, 519 U.S. 948, 117 S.Ct. 359 (1996) ("Actions which are related to the judicial process fulfill the prosecutor's advocatory function and are considered absolutely immune from suit"). The immunity afforded prosecutors is absolute, not qualified, and protects a prosecutor from being sued in connection with his duties altogether, regardless of the merits of the claim. See Lucas v. Parish of Jefferson, 999 F.Supp. 839, 942 (E.D.La. 1998). Absolute immunity protects prosecutors from all liability even when they act "maliciously, wantonly, or negligently." Morrison v. City of Baton Rouge, 761 F.2d 242, 248 (5th Cir. 1985). "[A]cts which are investigative or administrative do not carry absolute immunity." Brooks, 84 F.3d at 168.

### III. Analysis.

#### A. Federal Claims.

Prudhomme, Bird, and Ellis are sued only in their individual capacities. See Record Document 39 at ¶¶ 3(B), (C) & (F). Ulrich agrees that there are no official capacity claims against the individual prosecutors Prudhomme, Bird and Ellis. See Record Document 52 at 13. She agrees to voluntarily dismiss any such claims. See id. Thus, the instant motion is **GRANTED** as to any official capacity claims against Prudhomme, Bird and Ellis.

Many of Ulrich's claims against Prudhomme, Bird and Ellis relate to lack of training and/or policies, customs, and practices of the District Attorney's Office. See Record Document 39 at ¶¶ 23-25, 27. Again, there is no dispute that Prudhomme, Bird and Ellis have been sued in their individual capacities only. Likewise, Ulrich does not contest that Prudhomme, Bird and Ellis were assistant district attorneys. In this instance, it is the Court's "task is to identify those officials or governmental bodies who speak with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation." Burge v. Parish of St. Tammany, 187 F.3d 452, 468 (5th Cir.1999). In Burge, the Fifth Circuit concluded that "a district attorney is the independent and final official policymaker for all of the administrative and prosecutorial functions of his office." Id. at 469. Thus, because they have been sued in their individual capacities only, assistant district attorneys Prudhomme, Bird and Ellis can not be held liable as to the existence, or lack thereof, of a policy, a practice, a custom, or training. See Truvia v. Julien, 187 F. App'x 346, 350 (5th Cir. 2006) ("An assistant district attorney, therefore, is not a policymaker and not the proper defendant for an official capacity claim against the District Attorney's Office"). Thus, the Rule 12(b)(6) motion is

**GRANTED** to the extent Ulrich is asserting claims relating to policy, practice, custom, and/or training against Prudhomme, Bird and Ellis.[2]

Ulrich argues that she was subjected to a groundless prosecution in violation of her constitutional rights because the prosecution: (1) lacked probable cause; (2) lacked jurisdiction; and (3) was out of time. See Record Document 52 at 10. She further contends that Prudhomme, Bird and Ellis are not entitled to absolute immunity because: (1) they were without jurisdiction; (2) they were performing the functions of a complaining witness or law enforcement officer when they requested the bench warrant; and (3) they were performing administrative functions relative to the issuance of letters to Ulrich to appear in court under the penalty of contempt. See id.

Prudhomme, Bird and Ellis argue that all of the allegations made against them involve some aspect of a prosecution of a criminal charge. Ulrich's claims against them are based on discrete factual events: Ellis requesting a docket number; the mailing and returns of the letters in August and September 2011; and the request for a bench warrant. See Record Document 39 at ¶¶ 15, 17, 19-22. Beyond these events, Ulrich alleges that Prudhomme, Bird and Ellis "knew or should have known" certain facts, namely:

> [A]t the time they issued the letters and made the decision to request the bench warrant that there was a substantial probability that (1) the prosecution of Plaintiff and all attendant proceedings were in violation of the Double Jeopardy and Due Process clauses of the Louisiana Constitution and the U.S. Constitution and (2) Plaintiff had received no notice of the proceedings against her and that a request for a bench warrant was unsupported by probable cause (3) the time for instituting prosecution has passed and (4) there was no jurisdiction and venue. There had been no probable cause determined by a court of law. Prudhomme, Ellis and Bird knew or should have known that the (1) notices to Ulrich to appear, and a

---

[2]Such claims are more properly directed against the Caddo Parish District Attorney, who has been sued in his official capacity. See Record Document 39 at ¶ 3(A).

> decision to request for a bench warrant under these circumstances violated Plaintiff's Fourth, Fifth and Fourteenth Amendment rights. The failure to verify and obtain the correct address of Plaintiff; and, (2) failure to understand they had no power to command a person to appear in Court without first having a summons, indictment or bill of information issued; and, (3) failure to verify jurisdiction and venue . . .; and, (4) failure to consider the time limits; and, (5) failure to consider probable cause were a cause in fact of the issuance of the bench warrant.

Record Document 39 at ¶ 22.

Under Iqbal, this Court is not bound to accept as true legal conclusions couched as factual allegations. See Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949-1950. In Twombly, the Court found allegations that relied upon information and belief and those that set forth a "wholly conclusory statement of claim" to be inadequate. Twombly, 550 U.S. at 561, 127 S.Ct. at 1968. Here, Ulrich's allegations regarding what Prudhomme, Bird and Eillis knew or should have known are conclusory in nature and the type of allegations that are not entitled to the assumption of truth. Ulrich has provided no factual support for the Court to even reach the plausibility stage as to these "knew or should have known" assertions. Accordingly, the Court hereby **GRANTS** the Rule 12(b)(6) motion as to Ulrich's "knew or should have known" allegations, as these allegations are nothing more than conclusory allegations that are not entitled to the presumption of truth at the Rule 12(b)(6) stage.

Moving past the conclusory allegations and the policy/custom/practice/training allegations, the Court will address Ulrich's remaining claims and her arguments as to why absolute immunity is inapplicable.

Jurisdiction

The jurisdictional argument is new to Ulrich's Third Amended Complaint and is based on Ulrich's allegation that the alleged criminal offenses occurred in Bossier Parish, not Caddo Parish. See Record Document 39 at ¶¶ 5, 22. She now alleges that

Prudhomme, Bird and Ellis "knew that there was a likelihood that Caddo Parish DA did not have jurisdiction." Record Document 39 at ¶ 35. She maintains that "without jurisdiction, the DA is without absolute immunity." Record Document 52 at 30.

"A prosecutor's absolute immunity will not be stripped because of action that was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." Kerr v. Lyford, 171 F.3d 330, 337 (5th Cir. 1999), *abrogated on other grounds by* Castellano v. Fragozo, 352 F.3d 939 (5th Cir. 2003), citing Stump v. Sparkman, 435 U.S. 349, 356-357, 98 S.Ct. 1099, 1105 (1978). Ulrich argues that "the prosecutors did not simply act in excess of their authority but are alleged to have acted without any colorable claim of authority and in excess of their jurisdiction." Record Document 52 at 33. Conversely, the prosecutors contend they did not act "in the clear absence of all jurisdiction." Record Document 57 at 1-2.

Stump relies heavily upon Bradley v. Fisher, 80 U.S. 335 (1871), wherein the Supreme Court held:

> A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible.

Id. at 351-352. Thus, the "clear absence of all jurisdiction" exception to absolute immunity requires the official to know that he lacked jurisdiction. Here, Ulrich alleged that Prudhomme, Bird and Ellis knew or should have known that there was no jurisdiction or venue. Record Document 39 at ¶ 22. She later alleged that they "**knew that there was a likelihood** that Caddo Parish DA did not have jurisdiction." Id. at ¶ 35 (emphasis added).

These "knew or should have known" and "likelihood" allegations were previously held to be conclusory in nature. They are not entitled to the presumption of truth. Moreover, based on the facts plead by Ulrich in the Third Amended Complaint, it is undisputed that the prosecution file was referred by the City of Shreveport, that is, a law enforcement or government agency whose jurisdiction was in Caddo Parish. See Record Document 39 at ¶ 13. Ulrich cannot plead this factual allegation and then argue that the prosecutors knew they lacked jurisdiction and acted in clear absence of all jurisdiction.

Functions of a Complaining Witness or Law Enforcement Officer

Ulrich argues that Prudhomme, Bird and Ellis are not entitled to absolute immunity because they acted as complaining witnesses or in a law enforcement capacity. More specifically, she maintains they "applied for a warrant much the same way a police detective might"; caused the "attestation to the truth of evidence to the First Judicial District Court as officers of the court"; and "requested under false pretenses [and] applied for a warrant to arrest Plaintiff without any probable cause." Record Document 52 at 17, 18, 20.

Here, the prosecutors did not advise officers during an investigation, did not assist in the preparation of the warrant application, and were not present during the execution of the warrant. In fact, as noted by Defendants, the decision to issue a summons versus an arrest warrant/bench warrant in this matter was a judicial decision, not a prosecutorial decision. See Record Document 57 at 8. Moreover, Prudhomme, Bird and Ellis did nothing more than request, as officers of the court, that a bench warrant be issued. They were acting as prosecutorial advocates, not complaining witnesses or law enforcement.

Administrative Functions

Ulrich argues that the acts of Prudhomme, Bird and Ellis in affixing an address to

a letter and in causing the letter to be mailed, i.e., giving notice, are administrative functions not covered by absolute immunity.  See Record Document 52 at 26.  She contends that "organizing case files before an indictment or finding of probable cause falls outside the advocative time frame."  Id.

The Court previously addressed these arguments in its Memorandum Ruling of March 24, 2015.  See Record Document 31.  Again, the Court notes the broad impact of absolute immunity, as the doctrine protects prosecutors from all liability even when they act "maliciously, wantonly, or negligently."  Morrison, 761 F.2d at 248.  Moreover, the Court believes that the issuance of the notice letters was an action related to the judicial process such that it fell within the prosecutorial role of Prudhomme, Bird and Ellis.  See Brooks, 84 F.3d at 168.  As argued by Defendants, this Court finds that sending a notice to defendant regarding their upcoming arraignment should be protected by the same shelter that protects other prosecutorial acts from the threat of subsequent vexatious litigation.

Notwithstanding, even if this Court were to consider the issuance of such letters to be administrative, such acts fall within the scope of the Supreme Court's Van de Kamp decision.  In Van de Kamp v. Goldstein, 555 U.S. 335, 129 S. Ct. 855 (2009), the Supreme Court compared administrative duties not connected with prosecution versus those administrative duties so closely related to prosecutorial functions such that they are covered by absolute immunity.  The Court held:

> Even so, we conclude that prosecutors involved in such supervision or training or information-system management enjoy absolute immunity from the kind of legal claims at issue here.  Those claims focus upon a certain kind of administrative obligation – a kind that itself is directly connected with the conduct of a trial.  Here, unlike with other claims related to administrative decisions, an individual prosecutor's error in the plaintiff's specific criminal trial constitutes an essential element of the plaintiff's claim.  The administrative obligations at issue here are thus unlike administrative duties

>concerning, for example, workplace hiring, payroll administration, the maintenance of physical facilities, and the like. Moreover, the types of activities on which Goldstein's claims focus necessarily require legal knowledge and the exercise of related discretion, e.g., in determining what information should be included in the training or the supervision or the information-system management. And in that sense also Goldstein's claims are unlike claims of, say, unlawful discrimination in hiring employees. Given these features of the case before us, we believe absolute immunity must follow.

Id. at 344, 129 S. Ct. at 861-862. Based upon this rationale, absolute immunity follows because the sending of the notices was directly connected with the conduct of prosecution. Moreover, in sending the letters, Prudhomme, Bird and Ellis necessarily employed some level of legal knowledge and the exercise of their related discretion.

Ulrich also argues that the illegality and unconstitutionality of the process used in the attempt to notify her about forthcoming filing of a bill of information prevents the attachment of absolute immunity.[3] Additionally, she contends that Prudhomme, Bird and Ellis intentionally provided false or misleading information to the state court to issue the bench warrant and, thus, absolute immunity is unavailable.[4] Again, this Court previously addressed these arguments in its Memorandum Ruling of March 24, 2015. See Record Document 31. Mindful that absolute immunity protects prosecutors from all liability even when they act "maliciously, wantonly, or negligently," the Court believes that obtaining a bench warrant when Ulrich did not appear was a prosecutorial function. Morrison, 761 F.2d at 248. Many of Ulrich's allegations as to these issues are part of her "knew or should

---

[3]Ulrich maintains that the letters commanding her appearance under the threat of contempt of court were not authorized by law, as there was no pending prosecution and no probable cause determination.

[4]Ulrich contends that the bench warrant was issued based upon representations by Prudhomme, Bird and Ellis that Ulrich had received notice and she was under a lawful order to appear.

have known" allegations. The Court has previously held that such allegations are conclusory and are not entitled to the presumption of truth. The Court is also unconvinced by Ulrich's argument that the illegality of the notices negates the availability of absolute immunity, as the cases cited by Ulrich are inapposite to the instant matter.

For these reasons, the Rule 12(b)(6) motion is **GRANTED** as to all federal claims against Prudhomme, Bird and Ellis, as they are entitled to prosecutorial absolute immunity.

### B.    State Law Claims.

Ulrich contends that Prudhomme, Bird and Ellis are liable under state law based on the same factual allegations. In Knapper v. Connick, 96-0434 (La. 10/15/96), 681 So.2d 944, the Louisiana Supreme Court analyzed lower court decisions and federal court decisions including Imbler and concluded:

> We are persuaded that granting absolute immunity to prosecutors from malicious prosecution suits is appropriate when the activities complained of fall within the scope of the prosecutor's role as an advocate for the state and are intimately associated with the conduct of the judicial phase of the criminal process.

Id. at 950. More recently, the Louisiana Second Circuit Court of Appeals cited Buckley v. Fitzsimmons, 509 U.S. 259, 113 S.Ct. 2606 (1993), for "the principle that acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity. Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." Connor v. Reeves, 26,419 (La. App. 2 Cir. 1/25/95), 649 So. 2d 803, 805, *writ denied*, 95-0771 (La. 4/28/95), 653 So. 2d 601. Thus, this Court concludes that Louisiana law as to prosecutorial absolute

immunity mirrors federal law and Prudhomme, Bird and Ellis are absolutely immune from liability under Louisiana law. The Rule 12(b)(6) motion is **GRANTED** as to all state law claims against Prudhomme, Bird and Ellis, as they are entitled to prosecutorial absolute immunity.

## CONCLUSION

Based on the foregoing analysis, the Court **GRANTS** the Rule 12(b)(6) Motion as to all federal and state law claims against Prudhomme, Bird and Ellis.

**IT IS SO ORDERED.**

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 16th day of August, 2016.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE