**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

AMBER HAHMER ULRICH                    CIVIL ACTION NO. 14-0037

VERSUS                                 JUDGE S. MAURICE HICKS, JR.

CHARLES R. SCOTT, ET AL.               MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court is a Motion to Dismiss Pursuant to Rule 12(b)(6) filed by Defendants, the City of Shreveport ("the City"), City Attorney Terri Scott ("City Attorney Scott"), Shreveport Police Officer Jimmy N. Ray ("Officer Ray"), and Shreveport Police Officer P.A. Lamotte ("Officer Lamotte"). See Record Document 42. Defendants argue that Plaintiff Amber H. Ulrich's ("Ulrich") Third Amended Complaint fails to state factual allegations against the City, City Attorney Scott, Officer Ray and Officer Lamotte sufficient to state a plausible claim for relief. See id. Ulrich has opposed the motion. See Record Document 49. For the reasons which follow, the Rule 12(b)(6) Motion is **GRANTED** and all of Ulrich's claims against the City, City Attorney Scott, Officer Ray, and Officer Lamotte are **DISMISSED WITH PREJUDICE**.

**BACKGROUND**

Ulrich asserts the following federal claims: violation of the Fourth Amendment (false arrest) against the City, City Attorney Scott, Officer Ray and Officer Lamotte; violation of Fifth Amendment (protection against double jeopardy) against City Attorney Scott, Officer Ray and Officer Lamotte; violation of the Sixth Amendment (right to a speedy trial) against

Officer Ray and Officer Lamotte;[1] and violation of due process and malicious prosecution against the City, City Attorney Scott, Officer Ray and Officer Lamotte. See Record Document 39 (Third Amended Complaint) at ¶¶ 34-52. She also asserts state law claims of abuse of process, malicious prosecution, false arrest and double jeopardy against the City and City Attorney Scott. See id. at ¶¶ 53-58.

Her claims arise from the Shreveport City Attorney transferring a dismissed misdemeanor case to the Caddo Parish District Attorney for prosecution of a felony. See id. at ¶ 12. Ulrich alleges that the transferred case had been closed and dismissed by the Shreveport City Attorney in February 2008 after she paid administrative fees and completed "the City Attorney's probation or pre-trial diversion program" Id. at ¶¶ 6-7. She contends that her "sentence was a final adjudication." Id. at ¶ 7. After the case was transferred to Caddo Parish District Court, Ulrich was arrested in January 2013, spent two to three weeks in jail, lost her security officer job at a local casino, and lost her gaming license. See id. at ¶¶ 8-11, 29. The felony charges were ultimately dismissed in February 2013, with the Caddo District Attorney's Office citing "defendant convicted in another jurisdiction" as the reason. Id. at ¶¶ 12, 30.

As to the Defendants named in this motion, Ulrich specifically alleges:

The CITY ATTORNEY, Ray and Lamotte acting on behalf of the CITY OF SHREVEPORT sent the dismissed case to district court for prosecution by the Caddo Parish DA. Due to the influence of the CITY ATTORNEY, Ray and Lamotte, the Caddo District Attorney's office accepted the case for prosecution. The City Attorney, Ray and Lamotte failed to notify the Caddo District Attorney's office that the City Attorney had already prosecuted this matter and had dismissed it. The City Attorney, Ray and Lamotte failed to

---

[1]The City and City Attorney Scott are not defendants as to the violation of the Sixth Amendment (right to a speedy trial) claim. See Record Document 39 at ¶ 45.

provide the Caddo Parish DA with a current, valid address at which to notify Plaintiff.  The City Attorney, Ray and Lamotte knew or should have known Plaintiff's address.  The Caddo Parish DA accepted the case for prosecution in part due to the prestige and clout of the City Attorney, Ray and Lamotte and City Attorney employees.  If the City Attorney, Ray and Lamotte had not referred the case for prosecution, the Caddo Parish DA would not have prosecuted the case.

Record Document 21 at ¶ 13.  Ulrich further alleges that "Ray and Lamotte were negligent in failing to determine (1) if the charge had been disposed of in the city court which would have protected Plaintiff Ulrich from double jeopardy[;] (2) whether the Caddo Parish DA had jurisdiction to prosecute the case in the first place since it alleged the underlying crime allegedly happened in June 2007, when Plaintiff was living in Bossier Parish, LA[; and] (3) that the time limits had expired to prosecute the case."  Id. at ¶ 14.  Ulrich also alleges certain policies and practices were flawed:

> 23.   None of the named Defendants herein had a policy or practice of verifying whether or not a city police issued summons over six months old had been previously prosecuted.  Rather the defendants had a policy or practice of prosecution without verification of charges, jurisdiction and venue and time limits that were based on events over six months old. . . .   The Defendants should know under these circumstances that bench warrants are at substantial risk of being issued with double jeopardy or due process violations and without probable cause.
>
> . . .
>
> 27.   The . . . City Attorney and City of Shreveport did not provide training, nor made any policy or practice as to the use of addresses listed on summons which is known to be outdated or which present indicia of being stale (over two years old).  The lack of such a practice or policy is an obvious deficiency which would lead to a constitutional violation such as a false arrest on a bench warrant or which [would] result in a violation of double jeopardy.

Id. at ¶¶ 23, 27.  As to City Attorney Scott, Ulrich contends that "a prudent city attorney would be motivated under such circumstances to implement a policy of checking summons

that are dated over either two years or five years to insure that the matter is still an open case and additionally the information on the defendant is accurate and current and would provide training to clerical staff." Id. at ¶ 27.

The City, City Attorney Scott, Officer Ray, and Officer Lamotte have now moved to dismiss all of Ulrich's claims against them.

## LAW AND ANALYSIS

### I.      Rule 12(b)(6) Standard.

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted."  While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-1965 (2007); see also Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir.2007).   A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id.  The Supreme Court expounded on the Twombly standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true.  See In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th

Cir.2009).

## II.  **Monell Standard.**

Under Monell, a municipality cannot be held vicariously liable for the unconstitutional actions of its employees or agents.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S.Ct. 2018, 2037 (1978).  Instead, a municipality can be held liable under Section 1983 only when there is "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 1203 (1989).  Thus, in order to survive a motion to dismiss, the Fifth Circuit requires a plaintiff to plead specific facts which show:  (1) a policy or custom existed; (2) the municipal policymakers actually or constructively knew of its existence; (3) a constitutional violation occurred; and (4) the custom or policy served as the moving force behind the violation.  See Meadowbriar Home for Children v. Gunn, 81 F.3d 521, 532-533 (5th Cir. 1996), citing Palmer v. City of San Antonio, 810 F.2d 514, 516 (5th Cir. 1987).

## III.  **Immunity Standards.**

A prosecutor sued in his individual capacity is immune from civil suit for damages under Section 1983 for his actions in initiating and pursuing a criminal prosecution through the judicial process.  See Imbler v. Pachtman, 424 U.S. 409, 431, 96 S.Ct. 984, 995 (1976); see also Brooks v. George County, 84 F.3d 157, 168 (5th Cir.), cert. denied, 519 U.S. 948, 117 S.Ct. 359 (1996) ("Actions which are related to the judicial process fulfill the prosecutor's advocacy function and are considered absolutely immune from suit").  The immunity afforded prosecutors is absolute, not qualified, and protects a prosecutor from being sued in connection with his duties altogether, regardless of the merits of the claim.

See Lucas v. Parish of Jefferson, 999 F.Supp. 839, 942 (E.D.La. 1998).   Absolute immunity protects prosecutors from all liability even when they act "maliciously, wantonly, or negligently." Morrison v. City of Baton Rouge, 761 F.2d 242, 248 (5th Cir. 1985).  "[A]cts which are investigative or administrative do not carry absolute immunity."  Brooks, 84 F.3d at 168.

Qualified immunity generally shields government officials who perform discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). In evaluating a motion to dismiss based on qualified immunity, a court must first consider whether the facts as alleged show that the defendant's conduct violated a constitutional right.  See Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001).  If so, the court must consider whether the right was sufficiently clear that a reasonable official would understand that the alleged conduct violates the right.[2]  See id. at 202, 121 S.Ct. at 2156. The court need not necessarily conduct the analysis in this order.[3]  See Pearson v. Callahan, 555 U.S. 223, 227, 129 S.Ct. 808, 812 (2009).  "Bare allegations of malice

---

[2]"The second prong of the qualified immunity test is understood as two separate inquiries:  whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the defendant's conduct was objectively unreasonable in the light of that then clearly established law."  Tolan v. Cotton, 713 F.3d 299, 305 (5th Cir. 2013).

[3]"Qualified immunity may be granted without deciding the first prong if plaintiff fails to satisfy the second."  Tolan, 713 F.3d at 305 (5th Cir.2013).  "Deciding the second prong first is often advisable; for example, if . . . a constitutional right is claimed to have been violated (first prong), this approach of first addressing the second prong comports with the usual reluctance to decide constitutional questions unnecessarily."  Id.

should not suffice to overcome qualified immunity." Harlow, 457 U.S. at 817, 102 S.Ct. at 2738.

## IV.    Analysis.

At the outset, the Court notes that Ulrich has agreed to the dismissal of official capacity claims against City Attorney Scott, Officer Ray and Officer Lamotte "reserving official capacity claims against the City."  Record Document 49 at 11.  Ulrich has also agreed to dismiss the claims of denial of speedy trial against the City, City Attorney Scott, Officer Ray and Officer Lamotte.  See id. at 11.  Finally, Ulrich agrees that her Fourth Amendment claims for the 2007 arrest have prescribed and she does not claim damages from that arrest or prosecution.  See id. at 12.  The Rule 12(b)(6) Motion is, therefore, **GRANTED** as to these claims.

### A.    Federal Claims Against the City (Official Capacity Claims).

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

U.S. Const. Amend. IV.  The Double Jeopardy Clause of the Fifth Amendment provides that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. Amend. V.  Ulrich also a violation of her due process rights and malicious prosecution.

Ulrich alleges that the City and/or City Attorney Scott knew or should have known that she had already been prosecuted and there was no policy in effect to detect this type

of error, all in violation of her Fourth Amendment rights.  See Record Document 39 at ¶ 35.

She further contends that the City and City Attorney Scott violated her Fifth Amendment

in that they failed "to inform the Caddo DA of the dismissal of the prosecution and that the

prosecution was on the same charges."  Id. at ¶ 44.  Finally, Ulrich alleges that

"Defendants referred the case for prosecution for reasons other than to bring [her] to

justice." Id. at ¶ 52.

      Ulrich contends that the City's lack of policies form the basis of her Section 1983

claims.  She alleges that the City has a custom or practice of not verifying the prosecution

of a summons over two years old.  See Record Document 49 at 33.  She likewise argues

that City Attorney "Scott due to her policy making authority with the [C]ity in the filed of

prosecutions, creates Section 1983 liability against the City by even her single act" of

referring the case to the Caddo Parish District Attorney's Office for prosecution.  Id.  She

also argues that the City did not provide training, nor made any policy or practice as to the

use of addresses listed on a summons which is known to be outdated or which present

indicia of being stale.  See Record Document 39 at ¶ 27.

      At the outset, this Court notes that it has previously dismissed all federal claims

against the City.  See Record Documents 29 & 30.  Ulrich was permitted to file a Third

Amended Complaint, but only to amend to assert further details as to her claims against

Defendants Geya Prudhomme, Jordan Bird and Kenya Ellis, in their individual capacities,

and to bring claims against Officers Ray and Lamotte.  See Record Documents 37 & 38.

Ulrich did not request to amend her complaint, nor did this Court grant such relief, as to the

federal claims against the City.

      Notwithstanding, Ulrich makes the conclusory allegation that the City had a policy

or practice of not verifying the prosecution of a summons over two years old.  Ulrich's allegation is inadequate to state a claim against the City for violation of the Fourth or Fifth Amendments.  She has failed to identify any City policymakers who knew of this alleged policy or practice (or the lack thereof) and/or that the alleged promulgated policy/practice was the moving force behind her arrest and/or prosecution.

As to her failure to train allegation, she must show that (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.  See Gates v. Tex. Dept. of Protective and Regulatory Servs., 537 F.3d 404, 435 (quoting Estate of Davis ex rel. McCully v. City of North Richland Hills, 406 F.3d 375, 381 (5th Cir.2005)).  Here, Ulrich's assertions of inadequate training and supervision are inadequate to state a claim against the City, namely because there is no allegation of deliberate indifference, a stringent standard of fault.[4]  Accordingly, the Rule 12(b)(6) Motion is **GRANTED** and all federal claims against the City are **DISMISSED**.

### B.    Federal Claims Against City Attorney Scott (Individual Capacity Claims).

Again, the Court notes that it has previously dismissed all federal claims against City

---

[4]"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.  For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  Deliberate indifference requires a showing of more than negligence or even gross negligence.  Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference . . . .  To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." Estate of Davis, 406 F.3d at 381-382.

Attorney Scott.  See Record Documents 29 & 30.  Ulrich did not request to amend her complaint, nor did this Court grant such relief, as to the federal claims against City Attorney Scott.

Notwithstanding, as to the federal claims, City Attorney Scott invokes absolute prosecutorial immunity.  The Court finds that absolute immunity is warranted, as it believes all of Ulrich's factual allegations against Scott concern acts committed by Scott in her adjudicative role as a prosecutor.  As to the Fourth Amendment false arrest claim, City Attorney Scott's only link to Ulrich's arrest was transferring the case for prosecution, which this Court believes to be intimately associated with the judicial phase of the criminal process and not an administrative or investigative task.[5]  See Brooks, 84 F.3d at 168.  As to the Fifth Amendment double jeopardy claim, the Court likewise finds that Scott is entitled to absolute prosecutorial immunity.  While the decision to transfer the case to the Caddo Parish District Attorney's Office might have been erroneous and/or negligent, this Court believes it falls within the scope of initiating and pursuing a criminal prosecution.  See Imbler, 424 U.S. at 431, 96 S.Ct. at 995.  Despite Ulrich's argument to the contrary, this Court holds that Scott was not acting in an investigatory capacity, to which absolute immunity does not extend.  Finally, Ulrich's allegation that City Attorney Scott referred the case for prosecution for reasons other than to bring Ulrich to justice is conclusory in nature.  Moreover, the referral is an act intimately associated with the judicial phase of the criminal

---

[5]The Court notes that there are some purely administrative tasks that are so intimately associated with the judicial phase of the criminal process that they will nonetheless be covered by absolute immunity.  See Van de Kamp v. Goldstein, 555 U.S. 335, 349, 129 S. Ct. 855, 864 (2009) (holding absolute immunity applies to prosecutor's failure to train, failure to supervise, and failure to establish an information system).

process.  Accordingly, all federal claims against City Attorney Scott are **DISMISSED** as she is entitled to absolute prosecutorial immunity.

### C.    Federal Claims Against Officers Ray and Lamotte.

While Officers Ray and Lamotte argue that Ulrich's allegations against them are insufficient to state a plausible claim for relief, they also have raised the defense of qualified immunity.  Ulrich alleges that Officers Ray and Lamotte transferred the dismissed case to district court; failed to notify the Caddo Parish District Attorney's Office that the matter had already been prosecuted; and failed to provide the Caddo Parish District Attorney with a current address.  See Record Document 39 at ¶¶ 13, 14. Ulrich also alleges lack of jurisdiction and lack of probable cause.  See id. at 5.  The Court finds that even accepting these factual allegations as true, they are insufficient to overcome the defense of qualified immunity.

Here, the Court will proceed to the second prong of the qualified immunity analysis, that is, whether the allegedly violated constitutional right was clearly established at the time of the incident.  See Saucier, 533 U.S. at 202, 121 S.Ct. at 2156.  "A constitutional right is clearly established for purposes of section 1983 only if the law is clear enough such that 'a reasonable official would understand that what he is doing violates that right.'" Kovacic v. Villarreal, 628 F.3d 209, 213 (5th Cir. 2010), quoting Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034 (1987).  As noted by Officers Ray and Lamotte, Ulrich has pointed to no case law supporting a clearly established constitutional right to be free from a police officer sending a police report to the district attorney for review or to be free from a police officer providing another agency with outdated contact information of the accused.  Ulrich's

allegations are insufficient to satisfy the heightened pleading standard and overcome the defense of qualified immunity.  Ulrich contends that Officers Ray and Lamotte are not entitled to qualified immunity from the face of the complaint.  Yet, other than referencing her lack of jurisdiction and probable cause allegations[6] and pointing to case law involving a police officer's "deliberate failure to disclose patently exculpatory evidence," Ulrich has provided no evidence or argument to overcome qualified immunity. See Record Document 49 at 20-21.  Thus, the Rule 12(b)(6) motion is **GRANTED** and all federal claims against Officers Ray and Lamotte are **DISMISSED**, as both officers are entitled to qualified immunity.

### D.   State Law Claims.

Ulrich also asserts state law claims of abuse of process, malicious prosecution, false arrest and double jeopardy against the City and City Attorney Scott.   See Record Document 39 at ¶¶ 53-58.

City Attorney Scott

Ulrich contends that City Attorney Scott are liable under state law based on the same factual allegations set forth and discussed above.  In Knapper v. Connick, 96-0434 (La. 10/15/96), 681 So.2d 944, the Louisiana Supreme Court analyzed lower court decisions and federal court decisions including Imbler and concluded:

> We are persuaded that granting absolute immunity to prosecutors from malicious prosecution suits is appropriate when the activities complained of fall within the scope of the prosecutor's role as an advocate for the state and

---

[6]While Defendants deny these allegations, the Court notes that such allegations refer only to the June 2007 investigation and arrest.  See Record Document 39 at ¶ 5. Ulrich agrees that the claims relating to her 2007 arrest have prescribed.  See Record Document 49 at 12.

are intimately associated with the conduct of the judicial phase of the criminal process.

Id. at 950.  More recently, the Louisiana Second Circuit Court of Appeals cited <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 113 S.Ct. 2606 (1993), for "the principle that acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity. Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made."  <u>Connor v. Reeves</u>, 26,419 (La. App. 2 Cir. 1/25/95), 649 So. 2d 803, 805, *writ denied*, 95-0771 (La. 4/28/95), 653 So. 2d 601.  Thus, this Court concludes that Louisiana law as to prosecutorial absolute immunity mirrors federal law and City Attorney Scott is absolutely immune from liability under Louisiana law.  The Rule 12(b)(6) motion is **GRANTED** as to all state law claims against City Attorney Scott, as she is entitled to prosecutorial absolute immunity.

<u>The City</u>

Ulrich argues that the City is liable under state law based upon respondeat superior. <u>See</u> La. C.C. Art. 2320; Record Document 49 at 29-30.  The basis of her argument is that the City is liable for the negligence of attorneys who made faulty decisions.  <u>See id.</u> at 29. In the absence of any underlying tortious conduct of City employees, there can be no vicarious liability on the part of the City of Shreveport.  <u>See</u> <u>Cormier v. Lafayette City-Parish Consol. Govt.</u>, No. 11-31125, 2012 WL 4842272, *5 (5th Cir. 10/12/12); <u>Bates v. McKenna</u>, No. 11-1395, 2012 WL 3309381, at *7 (W.D.La. Aug. 13, 2012) (Hicks, J.) ("[Plaintiff's] state law vicarious liability claim against the City also fails because . . . there is no

underlying tortious act on the part of [the defendant officer]"); Courville v. City of Lake Charles, 720 So.2d 789, 800 (La.App. 3 Cir. 1998) ("Because we affirm the finding of no negligence on the part of the LCPD officers, the claim of vicarious liability against the City must fall.").  The Rule 12(b)(6) motion is **GRANTED** as to all state law claims against the City.[7]

## CONCLUSION

Based on the foregoing analysis, the Court **GRANTS** the Rule 12(b)(6) Motion as to all federal claims against the City, City Attorney Scott, Officer Ray, and Officer Lamotte. The motion is likewise **GRANTED** as to all of the state law claims against the City and City Attorney Scott.  The Court further **DENIES** Ulrich's request to amend.

**IT IS SO ORDERED.**

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 29th day of August, 2016.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE

---

[7]In a September 28, 2015 letter to the Court, Ulrich seeks to amend her complaint once again to clarify allegations against the City Defendants.  To the extent that such letter is a formal request to amend, the request is hereby **DENIED**.